**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:21-md-03015-SINGHAL/Valle**

IN RE:                                                          MDL CASE NO.: 3015

**JOHNSON & JOHNSON AEROSOL SUNSCREEN**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**
_____/

**THIS DOCUMENT RELATES TO:**                    CIV. CASE NO.: 21-62174

**GEORGE B. RAFAL, individually and on**          **FIRST AMENDED CLASS**
**behalf of all those similarly situated**              **ACTION COMPLAINT FOR**
                                                              **DAMAGES, RESTITUTION.**
       **Plaintiffs,**                                        **INJUNCTIVE AND EQUITABLE**
                                                              **RELIEF**
**v.**

**JOHNSON & JOHNSON**
**JOHNSON & JOHNSON CONSUMER, INC.,**

       **Defendants.**
_____/


Representative Plaintiff GEORGE RAFAL alleges as follows:

## INTRODUCTION

1.   This is a class action brought by Representative Plaintiff GEORGE RAFAL on behalf of a

California class, and a national class, of all persons who purchased certain Johnson & Johnson

Neutrogena and/or Aveeno brand sunscreens which have now been recalled due to benzene-

contamination. These sunscreens are dangerous:  they contain carcinogenic toxins which can cause

leukemia and other cancers with repeated exposure.

2.   The five affected products are Aveeno-branded Protect + Refresh aerosol sunscreen, and

four Neutrogena-branded sunscreen products: Beach Defense aerosol sunscreen, CoolDry Sport

aerosol sunscreen, Invisible Daily Defense aerosol sunscreen and UltraSheer aerosol sunscreen.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

1

**FIRST AMENDED CLASS ACTION COMPLAINT**

3.  On July 14, 2021, JOHNSON & JOHNSON CONSUMER, INC. (herein after JJCI) issued a press release stating: "Johnson & Johnson Consumer Inc. (JJCI) is voluntarily recalling all lots of five NEUTROGENA® and AVEENO® aerosol sunscreen product lines to the consumer level."

4.  The recall came nearly two months after independent online pharmacy Valisure, LLC detected high levels of benzene in various sunscreen products, and on or around March 24, 2021 petitioned the U.S. Food and Drug Administration (FDA) to issue a regulation, revise industry guidance, and take such other actions set forth therein including requesting recalls of the benzene-contaminated products,[1] Defendants' products among them.

5.  The two month delay by JJCI in failing to immediately recall the defective benzene-contaminated sunscreen products upon proof and Notice by Valisure, LLC, spanned both major holiday weekends of Memorial Day May 31st through July 4th Independence Day, coincided with the end of the traditional school year and the lifting of Covid-19 related activity and travel restrictions in several U.S. states, including California, with weeks of some of the hottest temperatures on record across the United States – events which JJCI reasonably expected would elevate consumer demand for, and sales of, sunscreen products, generating increased use of Defendants' contaminated products -- with corresponding increased exposure to the benzene contamination, the risks of which were then-known to Defendants but intentionally not disclosed by Defendants to the public, the purchasers, putative class members and consumers of its benzene-contaminated sunscreen products.

6.  On July 14, 3032, JJCI notified the Food and Drug Administration (FDA), acknowledging that benzene contamination was confirmed after testing (by Defendants and an independent laboratory) in the following products:

    a.  Neutrogena Beach Defense aerosol sunscreen

---

[1]  Valisure Petition https://drive.google.com/file/d/1er68VcXHuLkIDP40nDZ2BHVWBrOBYOiO/view

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

b. Neutrogena Cool Dry Sport aerosol sunscreen

c. Neutrogena Invisible Daily defense aerosol sunscreen

d. Neutrogena Ultra Sheer aerosol sunscreen

e. Aveeno Protect + Refresh aerosol sunscreen.

7. Benzene is a highly flammable chemical, a colorless or light-yellow liquid toxin at room temperature, used "primarily as a solvent in the chemical and pharmaceutical industries."[2]

8. According to the U.S. Centers for Disease Control and Prevention, benzene can damage the immune system and prevent cells from functioning properly. It can cause leukemia and other blood cancers with repeated exposure at high enough levels.[3]

9. The FDA regulates sunscreens to ensure they meet safety and effectiveness standards. All products that claim to provide Broad Spectrum SPF protection, including these five defective products, are regulated as over-the-counter drugs, rather than as cosmetics. 21 C.F.R. § 352, et seq. The FDA requires sunscreen manufacturers to subject their products to certain testing before they are made available to any consumer. The FDA has also identified those materials that qualify as acceptable active ingredients for products labeled as sunscreen. Benzene is not one of those acceptable ingredients.

10. A 2020 study by scientists at the FDA, which regulates sunscreens as cosmetic products, found that some sunscreen ingredients are absorbed into the bloodstream. The FDA currently recognizes the serious danger of benzene and lists it as a Class 1 solvent that "should not be employed in the manufacture of drug substances, excipients, and drug products because of their

---

[2] June 5, 2021, Elizabeth Elkind, CBS https://www.cbsnews.com/news/sunscreen-carcinogen-benzene/ .

[3] Facts about Benzene https://emergency.cdc.gov/agent/benzene/basics/facts.asp (2018)
American Cancer Society. Benzene and Cancer Risk (January 5, 2016)
https://www.cancer.org/cancer/cancer-causes/benzene.html

Law Offices of
TIMOTHY P. RUMBERGER
1339 Bay Street
Alameda, California 94501
(510) 841-5500

3

**FIRST AMENDED CLASS ACTION COMPLAINT**

unacceptable toxicity."[4]

11. The FDA's regulations provide that an "over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets" certain conditions. 21 C.F.R. § 352.1(a). Among other things, the product must contain "only suitable inactive ingredients which are safe in the amounts administered" and contain only listed active ingredients at a level "that does not exceed the amount reasonably required to achieve its intended effect." 21 C.F.R. § 330.1(h).

12. The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm for over 10 hours and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes.[5]  Yet Valisure tested multiple JJCI sunscreen products that contain levels of benzene *more than 20 times this level* – significantly surpassing 2 ppm. (fn.1, p.2)

13. Recent studies by FDA researchers have shown that significant amounts of sunscreen ingredients absorb through the skin and are found in the blood; specifically, **over 400 times** the threshold for systemic carcinogenicity assessment for at least one sunscreen active ingredient.[6]

14. Indeed, benzene is one of the most studied and concerning human carcinogens known; its association with forming blood cancers in humans has been shown in numerous studies.

---

[4]  FDA Q3C Tables and list guidance for Industry. https://www.fda.gov/media/71737/download

[5]  Centers for Disease Control and Prevention. The National Institute for Occupational Safety and Health (NIOSH), Benzene (October 30, 2019) https://www.cdc.gov/niosh/npg/npgd0049.html
Centers for Disease Control and Prevention. NIOSH. Benzene: Systemic Agent (2011)
https://www.cdc.gov/niosh/ershdb/emergencyresponsecard_29750032.html

[6]  Matta, MK; et. al. (2019). Effect of Sunscreen Application Under Maximal Use Conditions on Plasma Concentration of Sunscreen Active Ingredients A Randomized Clinical Trial. Journal of the American Medical Association 2019;321(21):2082-2091 https://jamanetwork.com/journals/jama/fullarticle/2733085
Matta, MK; et. al. (2020). Effect of Sunscreen Application on Plasma Concentration of Sunscreen Active Ingredients A Randomized Clinical Trial. Journal of the American Medical Association 2020;323(3):256-267 https://jamanetwork.com/journals/jama/fullarticle/2759002

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

4

**FIRST AMENDED CLASS ACTION COMPLAINT**

15. All of the samples tested by Valisure[7] "contained multiple times the maximum restricted FDA concentration exposure limit of 2 parts per million" of benzene, (*60 times* the concentration at which NIOSH recommends protective equipment be worn) according to Valisure's website,[8] while Neutrogena's Ultra Sheer Weightless Sunscreen Spray, SPF 100+ and Ultra Sheer Weightless Sunscreen Spray, SPF 70 were among the products Valisure claims have **some of the highest levels of benzene tested.**

16. Benzene's effects vary by whether a person inadvertently inhales or ingests it or gets it on skin and clothing. Symptoms range from dizziness and irregular heartbeat to convulsions and, at very high levels, death. FDA findings show sunscreen active ingredients are **absorbed into the bloodstream even after a single use**.[9] A study by researchers at Health Canada's Bureau of Chemical Hazards has shown that the application of sunscreen specifically increases the absorption rate of benzene through the skin.[10]

17. The clear evidence that benzene is associated with carcinogenic effects, specifically on blood-related tissues in humans, makes this especially concerning for the health impact of exposure to contaminated sunscreen products.

18. As such, the presence of this known human carcinogen in these JJCI sunscreen products, marketed and recommended on their packaging for the *prevention* of cancer and, as such, were

---

[7] Valisure operates an analytical laboratory accredited to International Organization for Standardization ("ISO/IEC") 17025:2017 standards for chemical testing. Valisure is registered with the Drug Enforcement Administration (License # RV0484814) and FDA (FEI #: 3012063246). Valisure's mission is to help ensure the safety, quality and consistency of medications and supplements in the market. https://drive.google.com/file/d/1er68VcXHuLkIDP40nDZ2BHVWBrOBYOiO/view

[8] May 25, 2021 https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/

[9] Food and Drug Administration. Shedding More Light on Sunscreen Absorption (January 21, 2020) https://www.fda.gov/news-events/fda-voices/shedding-more-light-sunscreen-absorption

[10] J S Nakai 1, I Chu, A Li-Muller, R Aucoin. (1997). Effect of environmental conditions on the penetration of benzene through human skin. Journal of Toxicology and Environmental Health. 1997 Aug 8;51(5):447-62. https://pubmed.ncbi.nlm.nih.gov/9233379/

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

5

**FIRST AMENDED CLASS ACTION COMPLAINT**

regularly used by putative class member adults, and children, is very troubling.

19. Beyond the significant concern for public health, there is also evidence that sunscreen products, and benzene in particular, pose a serious risk to the environment, marine ecosystems, and United States waterways. The FDA announced on May 12, 2021 a notice of intent to prepare an Environmental Impact Statement for certain sunscreen drug products due to their potential effects on coral and/or coral reefs.[11]

20. Additionally, the National Oceanic and Atmospheric Administration ("NOAA") published reports and infographics in February 2021 intended to educate consumers regarding the potential for sunscreen products to threaten corals and other marine life.[12]

21. Similarly, scientific papers published by NOAA have shown that benzene can be rapidly absorbed by fish[13] and short-term exposure (48 hr) to concentrations of benzene at parts per *billion* levels can significantly reduce survival of certain fish eggs.[14]

22. The FDCA prohibits the marketing of adulterated or misbranded cosmetics in interstate commerce and specifies a product as adulterated if "it bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or under conditions of use as are customary and usual."[15]

---

[11]  Food and Drug Administration. Environmental Impact Statement (EIS) for Certain Sunscreen Drug Products (May 12, 2021) https://www.fda.gov/drugs/guidance-compliance-regulatory-information/environmental-impact-statement-eis-certain-sunscreen-drug-products

[12]  National Oceanic and Atmospheric Administration. Skincare Chemicals and Coral Reefs (February 26, 2021) https://oceanservice.noaa.gov/news/sunscreen-corals.html

[13]  S Korn, N Hirsch, J W Struthsaker (1976). Uptake, Distribution, and Depuration of 14C-Benzene in Northern Anchovy, Engraulis Mordax, and Striped Bass, Morone Saxatilis. Fishery Bulletin. 1976 March Vol 74, No. 3: 545-51 https://spo.nmfs.noaa.gov/sites/default/files/pdf-content/1976/743/korn.pdf

[14]  J W Struthsaker (1977). Effects of Bezene (a toxic component of petroleum) on Spawning Pacific Herring, Clupea Harengus Pallasi. Fisher Bulletin. 1977 Vol 75, No. 1: 43-49 https://spo.nmfs.noaa.gov/sites/default/files/pdf-content/1977/751/struhsaker.pdf

[15]  Food and Drug Administration (March 8, 2021). FDA Authority Over Cosmetics: How Cosmetics Are

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

6

**FIRST AMENDED CLASS ACTION COMPLAINT**

23. As alleged herein, these five JJCI benzene-laden sunscreen products are adulterated under 21 U.S.C. §351, and are misbranded under 21 U.S.C. §352.

24. Similarly, these five JJCI benzene-laden sunscreen products are adulterated under California Health & Safety Code §111285 and §111260,[16] and 111295.[17]

25. Additionally, these five benzene-laden sunscreen products were also misbranded under California Health & Safety Code §§111330 & 111340,[18] §111400,[19] and §111445.[20]

26. JJCI, as required by the Lanham Act, 15 U.S.C. §1051-1127, has at all times relevant retained and bore a duty to exercise its rights to quality control over the design and manufacture of the five affected products,[21] so as to ensure that all goods bearing the JJCI trademark are of the same quality.

27. JJCI's participation in the packaging design, marketing and distribution of these defective sunscreen products far exceeded that of a mere passive holding company, including its orchestration of the nearly two-month delay in announcing the current recall.

---

Not FDA-Approved, but Are FDA-Regulated https://www.fda.gov/cosmetics/cosmetics-laws-regulations/fda-authority-over-cosmetics-how-cosmetics-are-not-fda-approved-are-fda-regulated

[16] H&S §111285 "Any drug or device is adulterated if…its purity or quality is below, that which it is represented to possess." §111260 "Any drug or device is adulterated if the…controls used for its manufacture…are not operated or administered …to assure that the drug or device…meets the quality and purity characteristics that it purports or is represented to possess."

[17] H&S §111295 "It is unlawful for any person to manufacture…any drug or device that is adulterated."

[18] H&S §111330 "any drug or device is misbranded if its labeling is false or misleading in any particular" §111340 "Any drug or device is misbranded unless it bears a label containing…(b) an accurate statement of the…contents..."

[19] H&S §111400 "Any drug or device is misbranded if it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in its labeling."

[20] H&S §111445 "It is unlawful for any person to misbrand any drug or device."

[21] Beach Defense aerosol sunscreen, CoolDry Sport aerosol sunscreen, Invisible Daily Defense aerosol sunscreen and UltraSheer aerosol sunscreen, and Aveeno Protect + Refresh aerosol sunscreen.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

7

28. Executives of JJCI collaborated in the development, manufacture and distribution of the five defective products, which they purport only "in an abundance of caution" to be now recalling due to the admitted presence of benzene in the samples tested and verified.

29. Because many of the sunscreen brands (competing with these five defective products) that Valisure tested did *not* contain detectable levels of benzene, it is clear that benzene use is not unavoidable for their manufacture, and considering the long history and widespread use of these products, it also does not appear that they currently constitute a significant therapeutic advance; therefore, *any* significant detection of benzene above 0.1 ppm should be deemed unacceptable.

30. JJCI sunscreens tested at levels as high as *60 times* this concentration.

31. As a result of the benzene contamination in the five affected sunscreen products, consumers who trusted the JJCI brand and counted on their skin care products to be safe and protect their health, have literally been "burned" by exposing themselves to carcinogenic toxins in the sunscreen they used as directed for protection from the risk of cancer.

32. Given the packaging representations and directions for use appearing on the product containers to "spray liberally and…apply to all skin exposed," many class members, including Plaintiff, have continued to spend money purchasing multiple containers of the affected products of the past months and years, unaware of the increased risk of benzene-induced cancers from using the products in the dosage, manner, frequency and duration directed in the labeling.

33. Despite Defendants' awareness of this pervasive risk of the products no later than May 24, 2021, Defendants failed entirely to warn consumers or any wholesalers or retailers in the chain of distribution of this known danger until July 14, 2021.

34. Instead, Defendants have evidently chosen to maximize their profits and delay the costs of immediately recalling the defective products they sold – **at the expense of their trusting customers being literally "burned"** by unwittingly increasing their exposure to the benzene

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

contamination in the five affected products. As another damaging result of Defendants' misfeasance in distributing the contaminated products, and malfeasance in delaying the recall, dangerous quantities of benzene-laden sunscreen has needlessly accumulated in lakes, rivers and waterways throughout America, and the oceans, contributing to further environmental damages while its otherwise improper manufacturing, packaging and transportation further contributed to global warming and natural resource depletion.

35. Representative Plaintiff, on behalf of himself and all members of the class he seeks to represent, seeks damages, interest thereon, restitution, injunctive and other equitable relief, reasonable attorneys' fees and costs as a remedy for Defendants' dangerous, unlawful and/or deceptive business practices, as detailed herein.

## JURISDICTION AND VENUE

36. On October 8, 2021, the United States Judicial Panel on Multidistrict Litigation ordered Jurisdiction and Venue of this matter transferred to the Southern District of Florida, and assigned to the Honorable Anuraag H. Singhal.

## REPRESENTATIVE PLAINTIFF

37. Plaintiff GEORGE RAFAL is an adult resident of the State of California, referred to in this Complaint as the "Representative Plaintiff."

38. Representative Plaintiff GEORGE RAFAL purchased JJCI Beach Defender numerous times during the claim period, including, the following illustrative purchases for $5.99 and $7.99 each (plus sales tax at 8.75% or 9.75%) at T J Maxx retail stores in Contra Costa County, California, within this judicial district, on March 14, 2021, April 3, 2021, April 26, 2021, and June 6, 2021, as documented in his purchase receipts.

39. When making these purchases, Representative Plaintiff GEORGE RAFAL reviewed the accompanying labels and disclosures, and understood them as representations and warranties by

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

9

**FIRST AMENDED CLASS ACTION COMPLAINT**

the manufacturer that this sunscreen product was properly manufactured, free from defects, and safe for its intended use. Representative Plaintiff GEORGE RAFAL relied on these representations and warranties in deciding to purchase these products manufactured by JJCI and these representations and warranties were part of the basis of the bargain – Plaintiff would not have purchased these products if he had known that they were not, in fact, safe, properly manufactured free from defects, unadulterated, and accurately labeled.

40. Prior to discovering the product defects summarized above, Representative Plaintiff applied this product liberally to his skin as directed on the product packaging.

41. As a purchaser and user of these products, the Representative Plaintiff was damaged by Defendants' misfeasance and malfeasance, and acts of omission and commission, both economically by his numerous purchases of the defective products, and by exposing himself to benzene contamination *as directed by Defendants* on the product spray container (device) itself.

42. Additionally, upon discovering the defect in the five affected products, including Beach Defender aerosol sunscreen, Representative Plaintiff has had the defect reported on his behalf and on behalf of all class members to Defendants in writing in July 2021.

43. Representative Plaintiff is, and was at all times relevant herein, a member of the National and California classes.

44. Representative Plaintiff brings this action on behalf of himself, and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated and proximately damaged by the unlawful conduct described herein.


## **DEFENDANTS**

45. JOHNSON & JOHNSON is a multinational corporation founded in 1886 that develops consumer packaged goods, pharmaceuticals and medical devices. It is ranked No. 36 on the 2021

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Fortune 500 list of the largest United States corporations by total revenue. Having acquired

Neutrogena in 1994 and Aveeno in 1999, Johnson & Johnson touts itself as "the world's largest

and most broadly based healthcare company."[22] The corporation, headquartered at 1 Johnson &

Johnson Plaza in New Brunswick, New Jersey, includes some 250 subsidiary companies with

operations in 60 countries and products sold in over 175 countries. Johnson & Johnson had

worldwide sales of $82.6 billion during calendar year 2020.[23]

46. Johnson & Johnson and its affiliates, including JOHNSON & JOHNSON CONSUMER

INC. (JJCI), produces, markets and sells both Neutrogena-band products and certain Aveeno-

brand products under its "Skin-Health/Beauty" franchise within its "Consumer Health Segment,"[24]

which generate, respectively approximately $4.5 billion and $14 billion in annual revenue.[25] The

"Consumer Heath Segment" of Johnson & Johnson's business represents a substantial portion of

Johnson & Johnson's revenue, eclipsing the $13.7 billion this Defendant paid in cash dividends

and common stock repurchases during 2020.[26]

47. According to court filings signed by Johnson & Johnson's General Counsel, Prior to June

29, 2015, Johnson & Johnson's operating companies included the Neutrogena Corporation and

Johnson & Johnson Consumer Companies, Inc. Neutrogena Corporation was a Delaware

corporation with its principal place of business in California. Johnson & Johnson Consumer

Companies, Inc. was a New Jersey corporation with its principal place of business in New Jersey.

48. On June 29, 2015, certain of Johnson & Johnson's operating companies, including both

---

[22] https://www.jnj.com/about-jnj; https://www.bloomberg.com/profile/company/JNJ:US

[23] https://www.prnewswire.com/news-releases/johnson--johnson-reports-2020-fourth-quarter-and-full-year-results-301214853.html

[24] Johnson & Johnson 2020 Annual Report filed on SEC Form 10-K for the period ended December 31, 2020, p. 1 ("Segments of the Business" – "Consumer Health"). https://www.investor.jnj.com/annual-meeting-materials/2020-annual-report

[25] *Id.* at page 21 ("Analysis of Sales by Business Segments").

[26] *Id.* at p. 44 JJCI and Subsidiaries – Consolidated States of Equity.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

11

**FIRST AMENDED CLASS ACTION COMPLAINT**

Neutrogena Corporation and Johnson & Johnson Consumer Companies, Inc., underwent a multi-step corporate restructuring. On that date, as relevant here, Neutrogena Corporation was converted to a Delaware limited liability company known as Neutrogena, LLC. Next, a new Delaware limited liability company known as Johnson & Johnson Consumer Companies, LLC was formed.

49. Thereafter, Johnson & Johnson Consumer Companies, Inc. merged into the newly formed Johnson & Johnson Consumer Companies, LLC. (a New Jersey Corporation) with and into Johnson & Johnson Consumer Companies, LLC (a Delaware Limited Liability Company).

50. Finally, both Neutrogena, LLC and Johnson & Johnson Consumer Companies, LLC, merged into a pre-existing subsidiary of Johnson & Johnson known as McNeil- PPC, Inc., a New Jersey corporation with its principal place of business in New Jersey.

51. Simultaneously, the name of McNeil-PPC, Inc. was changed to Johnson & Johnson Consumer Inc. ("JJCI"), a named defendant herein.

52. Out of all of the entities involved in this series of transactions, the only surviving entity was and is JJCI. At all times since June 29, 2015, and continuing to the present, JJCI has remained a New Jersey corporation with its principal place of business in New Jersey.

53. As relevant herein, notwithstanding Defendant JJCI's awareness of the benzene contamination in the five defective products as early as May 24, 2021, Defendant JJCI proceeded with the concept, design, manufacture, production, marketing, distribution and sales of these five dangerously defective sunscreen products to consumers, and inducing consumers to purchase these products, thereby violating the rights of Representative Plaintiff and all putative class members by concealing this defect from consumers, to pocket the ill-gotten profits from their unfair business practices, as detailed herein.

## CLASS ACTION ALLEGATIONS

54. Representative Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2)

Law Offices of
TIMOTHY P. RUMBERGER
1339 Bay Street
Alameda, California 94501
(510) 841-5500

12

and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated consumers, seeking certification on behalf of the following classes and class members:

a. <u>National JJCI Sunscreen Class:</u>  "All retail consumers in the United States, its Territories and the District of Columbia, who purchased for personal use Aveeno Protect + Refresh aerosol sunscreen, and four Neutrogena sunscreen versions: Beach Defense aerosol sunscreen, CoolDry Sport aerosol sunscreen, Invisible Daily Defense aerosol sunscreen and/or UltraSheer aerosol sunscreen, during the relevant claim period."

b. <u>California JJCI Sunscreen Class:</u>  "All retail consumers who resided in the state of California and purchased for personal use Aveeno Protect + Refresh aerosol sunscreen, and four Neutrogena sunscreen versions: Beach Defense aerosol sunscreen, CoolDry Sport aerosol sunscreen, Invisible Daily Defense aerosol sunscreen and/or UltraSheer aerosol sunscreen, during the relevant claim period."

55. Defendants, their officers, directors and employees, as well as the Judge(s) assigned to this matter, the jury in this case and the members of their immediate families and Representative Plaintiffs' counsel's law firm(s) are excluded from each of the Plaintiff classes.

56. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable:

c. <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiff is informed and believe and based thereon alleges that the number of class members is in the hundreds of thousands of individuals.

d. <u>Commonality</u>: The Representative Plaintiff and the class members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over questions and issues solely affecting individual members, including, but not necessarily limited to:

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

i. Whether these five defective sunscreen products contained benzene;

ii. The date Defendants first became aware of the benzene contamination in the five affected products;

iii. Whether Defendants had a duty to have disclosed to consumers the benzene contamination in the five affected products immediately upon Notice and awareness of the dangerously defective condition of these products;

iv. Whether Defendants' failure to disclose the presence of benzene in the five affected products until July 14, 2021 constitutes an actionable violation of law;

v. Whether Defendants' manufacturing, marketing, distributing, and selling of the five affected products violates California's Health & Safety Code §111285, §111260, §111295, §111330, §111340, §111400, and/or §111445;

vi. Whether Defendants engaged in fraud;

vii. Whether Defendants' conduct and business practices violate the Consumer Legal Remedies Acts("CLRA") California Civil Code §§1750, *et seq.*;

viii. Whether Defendants' conduct and business practices violate the Unfair Competition Law ("UCL") California Civil Code §§17200, *et seq.*;

ix. Whether Defendants breached any express or implied warranties;

x. Whether Defendants' conduct and business practices constituted deceptive trade practices;

xi. Whether Defendants' conduct constitutes a violation of public policy;

xii. The total number of each of the five affected products purchased by retail consumers, in United States and in California alone, during the relevant claim periods;

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

xiii. The identity of the major retailers in the chain of distribution of the five affected products that tracked the identities and/or contact information of consumers at the point of purchase during the relevant claim periods;

xiv. The liability of Defendants for their participation in the chain of distribution, and the merits of any defenses to liability available to Defendants;

xv. The profits realized from consumers' purchases of these five defective benzene-contaminated products by the Defendants, both during the entire claim period, and particularly during the period of delay between Defendants' notice and/or awareness of the presence of the benzene contamination in each of the five affected products, and July 14, 2019 when JJCI finally announced the recall;

xvi. Whether Representative Plaintiff and class members are entitled to relief, the amount and nature of such relief, including injunctive relief and/or restitution.

e. Typicality: The Representative Plaintiff's claims are typical of the claims of the Plaintiff classes. Representative Plaintiff's and all members of the Plaintiff classes sustained economic damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

f. Adequacy of Representation: The Representative Plaintiff will fairly and adequately represent the interests of each class, has the same interest in the litigation of this case as class members, is committed to vigorous prosecution of this case, and has retained competent counsel who is experienced in conducting class action litigation of this nature. The Representative Plaintiff is not subject to

Law Offices of
TIMOTHY P. RUMBERGER
1339 Bay Street
Alameda, California 94501
(510) 841-5500

**FIRST AMENDED CLASS ACTION COMPLAINT**

1     any individual defenses unique from those conceivably applicable to other class

2     members or the classes in their entirety. The Representative Plaintiff anticipates no

3     management difficulties in this litigation.

4

      g.   <u>Superiority of the Class Action procedure</u>: Since the damages suffered by

5

6     individual class members, while not inconsequential, may be relatively small, the

7     expense and burden of individual litigation by each member makes or may make it

8     impractical for members of the Plaintiff classes to seek redress individually for the

9     wrongful conduct alleged herein. Should separate actions be brought or be required

10     to be brought, by each individual member of the Plaintiff classes, the resulting

11     multiplicity of lawsuits would cause undue hardship and expense for the Court and

12     the litigants. The prosecution of separate actions would also create a risk of

13     inconsistent rulings that might be dispositive of the interests of other class members

14     who are not parties to the adjudications and/or may substantially impede their

15     ability to adequately protect their interests.

16

17

18                    **COMMON FACTUAL ALLEGATIONS**

19     57. Defendants placed into the stream of interstate, and indeed international, commerce the

20 five defective sunscreen products contaminated with benzene.

21     58. Notwithstanding Defendants' awareness of the benzene contamination in the five defective

22 sunscreen products as early as May 24, 2021, Defendants proceeded with the concept, design,

23 manufacture, production, marketing, distribution and sales of the five dangerously defective

24 sunscreen products to consumers, and continued to induce consumers to purchase these products

25 during the highest sunscreen demand periods of the year, thereby violating the rights of

26 Representative Plaintiff and all putative class members by concealing this defect from consumers,

27 to pocket the ill-gotten profits from their unfair business practices, as detailed herein.

28

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

16

**FIRST AMENDED CLASS ACTION COMPLAINT**

59. On information and belief, millions of these defective products have been purchased by consumers in California and throughout the United States within the relevant claim periods.

60. Consumers, including Representative Plaintiff and Plaintiff putative class members who purchased the five benzene-contaminated products, reasonably relied on the goodwill of the JJCI brands, including that of NEUTROGENA and AVEENO, and their representations that use of these products in the manner prescribed was safe.

61. Despite the reasonable expectations of consumers, including Representative Plaintiff and Plaintiff putative class members, Defendants knew and/or should have known--and yet refused to timely disclose—that the five defective products were and are defective due the presence of benzene therein.

**FIRST CLAIM FOR RELIEF**
**FRAUD/FRAUDULENT CONCEALMENT**
(*for the California and National Classes*)

62. Representative Plaintiff incorporates in this cause of action every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

63. Representative Plaintiff, on behalf of himself and all purchasers of the five benzene-contaminated sunscreen products as described herein, allege that Defendants made false statements of fact and specifically concealing the material fact that these five affected sunscreen products were contaminated with benzene and unsafe to use as directed on the packaging.

64. Defendants knew that the concealment of this dangerous defect was material to the consumer class members, and that the foregoing affirmative statements and material concealments were false at the time they made them and concealed the true facts, that the statements and material omissions were made to induce the Plaintiff and class members to purchase the five benzene contaminated products, and to induce them to depend upon the brand loyalty Defendants have cultivated, and that Representative Plaintiff and the Plaintiff putative class members were

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

damaged when the five affected products were purchased and used as directed.

65. Representative Plaintiff, on behalf of himself and all purchasers of the five defective products as described herein, alleges that Defendants through their marketing and through retailers in their chain of distribution made or displayed false statements of fact (*e.g.* that these products *reduced* the risk of cancer, and were *safe* to use as directed), that Defendants knew the statements were false, that Defendants continued to manufacture, distribute, market, and sell these five defective benzene-contaminated products, knowing they were indeed defective, and those actions were taken to induce the Plaintiff and all those similarly situated (the Plaintiff putative class members) to purchase these defective sunscreen products, and that Plaintiff and the Plaintiff putative class members were damaged when these defective sunscreen products were purchased and applied to their own bodies and the bodies of family members and loved ones.

66. At all relevant times herein, Defendants omitted and concealed the material facts as specifically set forth above and/or made the specific misrepresentations of material facts set forth above to the Representative Plaintiff and Plaintiff putative class members regarding the true nature and scope of the dangerous benzene contamination inherent in the five defective products. Defendants knew those material omissions and/or material misrepresentations of facts were false or misleading when nondisclosed or made.

67. Defendants made these misrepresentations of material facts and concealed the material facts alleged herein intentionally and/or recklessly, so as to induce reliance thereupon.

68. Representative Plaintiff and Plaintiff putative class members would have acted differently had the falsity of the misrepresentations and/or omitted facts been disclosed to them. If these defective products had been truthfully and accurately labeled, no consumer would have purchased these benzene-contaminated products. Accordingly, Representative Plaintiff and the classes were injured by the full purchase price of the five defective products.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

69. As a direct and proximate result of Defendants' misrepresentation, concealment, and suppression of the foregoing material facts, Representative Plaintiff and Plaintiff putative class members have sustained economic damages by bearing the cost of repeatedly purchasing the five benzene contaminated products, and personal injury by unknowingly exposing themselves to benzene contamination consistent with and at the direction of Defendants' product packaging.

70. The total amount of damages suffered by Representative Plaintiff and Plaintiff putative class members will be proven at trial. Further, Representative Plaintiff and Plaintiff putative class members are entitled to and hereby seek rescission, interest, costs of suit, attorneys' fees and/or other relief the court deems appropriate.

71. Finally, at all times herein mentioned, Defendants intended to cause or acted with reckless disregard of the probability of causing damage to Representative Plaintiff and Plaintiff putative class members, and because Defendants are guilty of oppressive, fraudulent and/or malicious conduct, Representative Plaintiff and Plaintiff putative class members are entitled to an award of exemplary or punitive damages against Defendants in an amount adequate to deter such conduct in the future.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**
**(California Civil Code §1750, *et seq.*)**
(*for the California Class Only*)

72. Representative Plaintiff incorporates in this cause of action every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

73. This claim for relief is brought pursuant to the CLRA (the Consumer Legal Remedies Act, California Civil Code §§1750, *et a1.).* Representative Plaintiffs and the California putative class members are "consumers," as that term is defined by Civil Code §1761(d) because they bought the five benzene contaminated products, for personal, family, or household purposes.

74. Representative Plaintiff and the California putative class members have engaged in a

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

"transaction" with the Defendants, as that term is defined by Civil Code §1761(e).

75. These Defendants' conduct constitutes an unfair method of competition and unfair and deceptive acts and practices under the CLRA, and were undertaken in transactions intended to result in, and which in fact resulted in, the sale of goods to consumers – namely, to manufacture, distribute and continue to sell the five defective benzene-contaminated products.

76. By engaging in the conduct alleged above, the Defendants violated California Civil Code §1770 by, *inter alia,* misrepresenting and concealing the nature and scope of the benzene exposure defect as Representative Plaintiff and California putative class members bore the cost of purchasing these products and/or otherwise incurred damages through the use of these sunscreens.

77. By concealing the benzene contamination inherent in the five defective sunscreen products from the Representative Plaintiff and the Plaintiff putative California class members, the Defendants misrepresented that these five sunscreen products have particular characteristics, uses and benefits or qualities, and are of a particular standard, quality or grade, in violation of Civil Code §1770.

78. By engaging in the conduct alleged herein, the Defendants also advertised and have continued to advertise goods with the intent not to sell them as advertised, in violation of California Civil Code §1770(a)(9).

79. Pursuant to §1782 of the CLRA, written notices were sent to the Defendants regarding their violations of the CLRA, thereby providing the Defendants with an opportunity to correct or otherwise rectify the problems alleged herein within 30 days of that notice.

80. Representative Plaintiff, on behalf of himself and the Plaintiff putative California class, now seeks this Court's Order requiring the Defendants to, *inter alia*: (a) cease violating the CLRA by immediately withdrawing from sale and accounting for all the affected sunscreen products not yet sold to the consumers, (b) notify California putative class members that the five defective

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

20

**FIRST AMENDED CLASS ACTION COMPLAINT**

products contain benzene, and  (c) provide California putative class members with reimbursement for the retail purchase costs of each of the five defective products bought.

## THIRD CLAIM FOR RELIEF
### BREACH OF STATUTORY EXPRESS WARRANTY
**(Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*)**
(*for the California and National Classes*)

81. Representative Plaintiff incorporates in this cause of action every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

82. Representative Plaintiff and the Plaintiff putative class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(3).

83. Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. §§2301(4)-(5).

84. Each of the five defective benzene-contaminated sunscreen products, are "consumer products" within the meaning of 15 U.S.C. §§2301(1).

85. Defendants' warranty is a "written warranty" within the meaning of 15 U.S.C. §§2301(6).

86. Defendants breached the warranty by, *inter alia*:

    a.  Selling the five defective sunscreen products with inherently dangerous contents, *i.e.* benzene contamination subjecting the consumers to carcinogenic exposure and increased risk of cancer;

    b.  Warranting that the five defective sunscreen products were "safe" and "if used as directed decreases the risk of cancer" despite knowledge that the defective sunscreens would, in fact, *increase* consumers' exposure to benzene and *increase* the risk of cancer if used as directed.

87. Defendants' breach of warranty deprived Representative Plaintiff and millions of Plaintiff putative class members of the benefits of their bargains.

88. The amount in controversy in this action exceeds $50,000, exclusive of interest and costs.

89. There are more than 100 members each of the proposed classes/subclasses.

90. Defendants have had a reasonable opportunity to cure their breach of written warranty, and

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

21

have failed to do so.

91. As a direct and proximate result of Defendants' breach of express warranty, Representative Plaintiff and the Plaintiff putative class members sustained damages and other losses in an amount to be determined at trial.

92. Further, Representative Plaintiff and Plaintiff putative class members are entitled to and hereby seek rescission, interest, costs of suit, attorneys' fees and/or other relief the court deems appropriate.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF EXPRESS WARRANTY**
(*for the California and National Classes*)

93. Representative Plaintiff incorporates in this cause of action every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

94. Defendants warranted that each of the five affected sunscreen products, was free of defects when it sold these products to Representative Plaintiffs and class members.

95. This warranty became part of the basis of the bargain. Accordingly, Defendants' warranty is an express warranty.

96. Defendants breached this warranty by, *inter alia*:

    a. Knowingly concealing the material fact of the benzene contamination in the products, the use of which would increase the consumers' carcinogenic exposure and risk of cancer, and

    b. Making the material misrepresentations of fact that the five defective products were safe to use, knowing that when applied as directed, use thereof would increase the consumers' carcinogenic exposure and risk of cancer.

97. Defendants knew of this defect, and were put on explicit notice of the defects by Valisure following its testing and the May 24, 2021 Petition to the FDA, but continued manufacturing, distributing, marketing and retailing these five benzene-contaminate sunscreen products to consumers.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

98. As a direct and proximate result of Defendants' breach of express warranty, Representative Plaintiff and Plaintiff putative class members sustained damages and losses in an amount to be determined at trial. Further, Representative Plaintiff and Plaintiff putative class members are entitled to and hereby seek rescission, interest, costs of suit, attorneys' fees and/or other relief the Court deems appropriate.

**FIFTH CLAIM FOR RELIEF**
**UNFAIR BUSINESS PRACTICES PURSUANT TO THE UNFAIR COMPETITION ACT**
*(for the California Class Only)*

99. Representative Plaintiff incorporates in this cause of action every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

100.     Representative Plaintiff and California putative class members bring this cause of action, seeking equitable and statutory relief to stop the misconduct of Defendants, as complained of herein, and seeking restitution from Defendants for the unfair, unlawful and fraudulent business practices described herein.

101.     Defendants' manufacturing, marketing, distributing and selling of these defective products violates California's Health & Safety Code §111285, §111260, §111295, §111330, §111340, §111400, and §111445 (*see footnotes* 16-20 *supra.*).

102.     Representative Plaintiff and the other members of the putative classes had no way of knowing that the defective products they bought were not actually as represented by Defendants. Thus, they could not have reasonably avoided the injury each of them suffered.

103.     The knowing conduct of Defendants, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code §§ 17200-17208 (the "UCL"). Such violations include, but are not necessarily limited to fraudulent and deceitful conduct and violations of California Civil Code §§ 1709-1711 and the Consumer Legal Remedies Act, California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9).

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

104. Defendants' knowing violations of the UCL continues to this day.

105. Defendants' knowing failure to act in accordance with and/or adhere to these laws, all of which are binding upon and burdensome to Defendants' competitors, engenders an unfair competitive advantage for Defendants, thereby constituting an unfair business practice, as set forth in California Business & Professions Code §§ 17200-17208

106. By engaging in these unlawful business practices, Defendants have enjoyed an advantage over its competition and a resultant disadvantage to the public and California class members for the entire four-year claim period set forth in Business & Professions Code §17208.

107. Defendants' knowing failure to adopt practices in accordance with and/or adhere to these laws, all of which are binding upon and burdensome to Defendants' competitors, engenders an unfair competitive advantage for Defendants, thereby constituting an unfair business practice, as set forth in California Business & Professions Code §§ 17200-17208.

108. Defendants have clearly established a policy of accepting a certain amount of collateral damage, as represented by the damages to Representative Plaintiff and California class members herein alleged, as incidental to its business operations, rather than accept the alternative costs of full compliance with fair, lawful and honest business practices ordinarily borne by responsible competitors of Defendants and as set forth in legislation and the judicial record.

109. The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason therefore -- particularly considering the available safe alternatives which exist in the marketplace -- such that is immoral, unethical, unscrupulous, offends established public policy, and is substantially injurious to Plaintiffs and other members of the putative class.

110. Representative Plaintiff and California putative class members request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing

Law Offices of
TIMOTHY P. RUMBERGER
1339 Bay Street
Alameda, California 94501
(510) 841-5500

FIRST AMENDED CLASS ACTION COMPLAINT

these unfair, unlawful, and/or deceptive practices and to restore to Representative Plaintiff and California class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in California Business & Professions Code § 17200, *et seq.*, and for such other relief set forth below.

## SIXTH CLAIM FOR RELIEF
### FALSE ADVERTISING – BUSINESS & PROFESSIONS CODE §17500-17509
*(for the Nationwide and California Classes)*

111.     Representative Plaintiff incorporates in this cause of action every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

112.     California Business and Professions Code §17500 states, in relevant part:

> It is unlawful for any…corporation…with intent directly or indirectly to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to…disseminate.. before the public in this state…any advertising device, or…over the Internet, any statement, concerning that …personal property…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading

113.     Defendants engaged in a scheme of advertising the five defective products identified herein for sale to Representative Plaintiff and others similarly situated by way commercial marketing.

114.     These marketing materials misrepresented or omitted the safety of the defective products and the fact that they contain the dangerous carcinogen benzene. Said advertisements and inducements originated and were made from the State of California and come within the definition of advertising as defined in Business and Professions Code §17500*, et seq.* as such marketing materials were intended as inducements to purchase the defective products and are statements disseminated by Defendants to Representative Plaintiff and other members of the classes and were intended to reach Plaintiffs and other class members.

115.     Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue or misleading.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

25

**FIRST AMENDED CLASS ACTION COMPLAINT**

116.    Consumers, including Representative Plaintiffs and other class members, were among the intended targets of such representations and omissions and would reasonably be deceived by such materials, and were so deceived.

117.    Defendants' above acts, in disseminating deceptive and untrue statements from the State of California and throughout the United States to consumers, were and are likely to deceive reasonable consumers, including Representative Plaintiff and other class members, by obfuscating the true nature of the defective products.

**118.**    Pursuant to Business and Professions Code §17535, Representative Plaintiff and all members of the California and Nationwide classes are entitled to an order of this Court enjoining Defendants from such future conduct, and such other orders and judgments necessary to disgorge Defendants' ill-gotten gains and unjust enrichment, and restore to any and all persons in interest any and all money paid for the defective products as a result of Defendants' wrongful conduct.

## REQUEST FOR RELIEF

**WHEREFORE,** the Representative Plaintiff, on behalf of himself and each member of the proposed National and California classes, respectfully requests that this Court enter judgment in Plaintiff's favor and for the following specific relief against Defendants, and each of them, jointly and separately, as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Representative Plaintiff's counsel as Class Counsel;

2. For an award to Representative Plaintiff and members of both classes of compensatory

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

**FIRST AMENDED CLASS ACTION COMPLAINT**

and special damages in an amount to be proven at trial;

3. That Defendants be found to have made negligent and/or intentional misrepresentations and/or material omissions of fact to the Representative Plaintiffs and members of both classes;

4. [*For the California class only*]: That the Court enjoin Defendants, ordering them to cease and desist from unlawful activities in further violation of California Business and Professions Code § 17200, *et seq.;*

5. For equitable relief enjoining Defendants from engaging in the wrongful conduct alleged herein;

6. That the Court enjoin Defendants from engaging in their current "plausible deniability cover" for the wrongful conduct alleged herein (*i.e.* using their websites and other publications to promote misleading "denials" that dangerously contradict the warnings of the scientific community that exposure to the levels of benzene detected in the five affected products is ***not*** safe or de minimis, and that all cumulative exposures to benzene increases the consumer's cancer risk.

7. For interest on the amount of any and all economic losses, at the prevailing legal rate;

8. For an award of punitive and/or exemplary damages, in an amount sufficient to deter such conduct in the future;

9. For an award of reasonable attorneys' fees;

10. For costs of suit and any and all other such relief as the Court deems just and proper;

11. For all other Orders, findings, and determinations identified and sought in this Complaint.

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

27

**FIRST AMENDED CLASS ACTION COMPLAINT**

## JURY DEMAND

Representative Plaintiff and members of each of the Plaintiff classes hereby demand trial by jury on all issues triable of right by jury.

Respectfully submitted,

DATED: November 16, 2021          By:

TIMOTHY P. RUMBERGER, Esq.
California State Bar #145984
Counsel for Representative Plaintiff
and Class Counsel for all putative Class Members

**LAW OFFICES OF TIMOTHY P. RUMBERGER**
1339 Bay Street, Alameda, California 94501
Telephone: (510)841-5500
Facsimile: (510)521-9700

Counsel for Plaintiff George B. Rafal
in *Rafal v. Johnson & Johnson, et al.*
Case No. 0:21-cv-62174-SINGHAL/Valle

*Law Offices of*
**TIMOTHY P. RUMBERGER**
**1339 Bay Street**
**Alameda, California 94501**
**(510) 841-5500**

28

**FIRST AMENDED CLASS ACTION COMPLAINT**